DANIEL WITHAM, Appellant, v. FREDERICK A. DELANO, WILLIAM K. BIXBY, and EDWARD B. PRYOR, Receivers of the WABASH RAILROAD COMPANY, Respondents.

Kansas City Court of Appeals, November 23, 1914.

1. NEGLIGENCE: Railroads: Humanitarian Rule: Track Laborers. The plaintiff instituted an action against defendants to recover for personal injuries caused by the operation of one of its passenger trains. Plaintiff was employed by a contractor as a laborer building new tracks near the main line. The camp train on which the laborers were housed and fed stood on this new track, and the passing trains had a clearance of three feet and two inches. The plaintiff was walking along the camp train with a bucket which he intended to fill with water from a tank car, when a passenger train running at a high rate of speed struck his elbow and injured him. *Held*, that plaintiff could not recover under the humanitarian rule, because he did not sustain the burden of proving that the engineer actually saw him in a position of obvious peril in time to prevent the injury by giving a signal.

2. ———: ———: ———: ———. The status of a person being that of a track laborer or section hand, who is required to keep out of the way of trains, the engineer of a passing locomotive is entitled to indulge the presumption of a clear track and is not required to be on the lookout for him.

3. ———: ———: ———: ———. It is of common knowledge that track laborers or section hands often voluntarily wait until trains get dangerously close to them and then step out of danger and let them pass by, and to require trains

to stop upon all such occasions, when section men are discovered at work on the track, would not only be imposing upon railroads unjust burdens but would greatly interfere with traffic and travel.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*Aubrey R. Hammett* for appellant.

(1) Plaintiff was not a section hand, or track workman, of the defendant, but an employee of an independent contractor who was invited to live in the bunk cars and use the track as a footpath at the place of the injury. Had a right under the contract between the defendants receivers and Grammitt & Johnson to live in the bunk cars and use the track as a footpath. And the defendants owed him the duty of exercising ordinary care towards him. Chandler v. Railroad, 251 Mo. 604; Butler v. Railroad, 155 Mo. App. 296; Weaver v. Railroad, 170 Mo. App. 289; Nelson v. Railroad, 132 Mo. App. 694. (2) Defendant owed this plaintiff that degree of care and watchfulness which an ordinarily prudent person would exercise under similar circumstances to prevent injury. Bennett v. Railroad, 242 Mo. 125; Railroad v. Drumright, 166 S. W. 938.

*J. L. Minnis, J. A. Collet, D. G. Phillips* and *D. H. Robertson* for respondents.

(1) The plaintiff was a licensee by invitation and was entitled to the exercise of the same care for his safety as an employee of the defendant engaged in the same kind of work. Weaver v. Railroad, 170 Mo. App. 289; Nelson v. Railroad, 132 Mo. App. 687; White on Personal Injuries, sec. 864; Collins v. Railroad, 23 J. & S. (N. Y.) 31. (2) The plaintiff being entitled to

the exercise of the same care for his safety as an employee of defendant engaged in the same work, he falls within the status of a track workman or section hand. Therefore, no lookout was required to be kept for him, and defendant could only be liable in case he was actually seen in a position of peril in time to avoid his injury by using ordinary care. Rashall v. Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257; Degonia v. Railroad, 224 Mo. 564; Sissel v. Railroad, 214 Mo. 515; Williamson v. Railroad, 139 Mo. App. 481. (3) The plaintiff cannot be permitted to deny the truth of his petition and evidence. Behen v. Transit Co., 186 Mo. 440; Habel v. Railroad, 140 Mo. 159; Harrison's Admr. v. Hastings et al., 28 Mo. 346. (4) Even if plaintiff be permitted to deny the truth of the petition and evidence, and stand upon an inference converse to his petition, theory of fact and proof, then no amendment should have been permitted, for the reason that this, taking plaintiff's view, constituted a total failure of proof. Hensler v. Stix, 113 Mo. App. 162; Litton v. Railroad, 111 Mo. App. 140. (5) The petition having charged the one alternative fact, proof of which would not make liability and the other alternative fact, proof of which would make liability and the evidence not pointing to one alternative more than the other, there could be no recovery. Warner v. Railroad, 178 Mo. 134; Smart v. Kansas City, 91 Mo. App. 586; Epperson v. Telegraph Co., 155 Mo. 346; Smith v. Bank, 99 Mass. 605; Searles v. Railroad, 101 N. Y. 661; Pierce v. Kyle, 26 C. C. A. 201. (6) Even if the engineer did actually see the plaintiff, nevertheless, under no state of pleading, could the plaintiff recover. Schupp v. Railroad, 166 Mo. App. 597; Veatch v. Railroad, 145 Mo. App. 232.

JOHNSON, J.—This is an action for personal injuries alleged to have been caused by negligence of defendant in the operation of one of its passenger

trains. A directed verdict was returned for defendant and plaintiff appealed. At the time of his injury which occurred about six o'clock p. m. September 1, 1913, near the station of Renick, plaintiff, a common laborer, was in the service of independent contractors who were laying a new main track for defendant parallel to, and eight feet south of, the old main track. The work had progressed to the stage where the new track had been laid and for a week or more had been occupied by ten or twelve camp cars in which the laborers, thirty-five or forty in number, boarded and lodged. The presence and uses of these cars were known to defendant and to the engineer and fireman of the locomotive that injured plaintiff. The old and new tracks were on the same level and were on a high fill. Ballast had been dumped between them but had not been leveled or made smooth. A sinuous path had been worn over the uneven surface of this ballast by the laborers who were compelled to use that space as a means of ingress and egress to and from the cars of the camp train. The camp cars were coupled together and each was about thirty feet long. When a passenger train went by the clear space between it and the camp train was three feet and two inches. A laborer could stand in safety in this space and the openings between the camp cars at intervals of thirty feet afforded him places of refuge if he desired to give the passing train a wider clearance. Plaintiff had quit work for the day, returned to the camp and was walking westward along the path carrying a bucket which he intended to fill with water at the tank car. When he had proceeded three car lengths a westbound passenger train, running forty or forty-five miles per hour, struck his right elbow and injured him. The engineer had whistled for the station and afterward for a public crossing but plaintiff had not noticed these signals and was not aware that the train was approaching. The engineer and fireman state they were looking

ahead as they neared the camp but neither observed plaintiff, and no warning signal was given. They did not know the engine struck him until their return trip thirty-six hours afterward. It was broad daylight, the track was straight and level, plaintiff was in possession of unimpaired senses of sight and hearing, and there were no obstacles to prevent him seeing or hearing the train had he looked or listened. His negligence must be conceded and the question at issue is whether or not his evidence discloses a cause which should have been submitted to the jury under the rules of the humanitarian doctrine.

Plaintiff's contract with his employers who, as stated, were independent contractors, required him to board and lodge at the camp cars which were maintained on the new track with the knowledge and consent of defendant. In using the path which afforded the only means of ingress and egress to and from the camp he was in the exercise of a lawful right and in no sense was a trespasser on the property of defendant. He was what is termed in some of the cases a licensee by invitation and was entitled to the same care for his safety the law would have exacted of the operators of defendant's trains towards him if he had been employed by defendant as a track laborer, instead of being employed by an independent contractor. [Weaver v. Railroad, 170 Mo. App. l. c. 289, et seq.; Nelson v. Railroad, 132 Mo. App. l. c. 694; White on Personal Injuries, sec. 864.]

The status of plaintiff was that of a track workman or section hand and the general rule is that as to such laborers who are required to keep out of the way of trains, the engineer of a passing locomotive is entitled to indulge the presumption of a clear track and is not required to be on the lookout for them. [Rashall v. Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257; Degonia v. Railroad, 224 Mo. 564; Sissel

v. Railroad, 214 Mo. 515; Williamson v. Railroad, 139 Mo. App. 481.]

The necessity for order and system in the operation of a railroad is so great and of such vital importance that the courts have always recognized and enforced reasonable rules and regulations prescribed by the company which give precedence to certain trains and classes of employees over others and require those of an inferior grade to give their superiors a clear track. Section men and track builders and repairers —those whose business it is to work upon and repair railroad tracks—are supposed to look after their own personal safety, and to know of the time at which trains pass, to look for them, and see them, and to move out of their way.'' [Sissel v. Railroad, 214 Mo. 1. c. 528.; Clancey v. Transit Co., 192 Mo. 1. c. 657; Evans v. Railroad, 178 Mo. 1. c. 517.] Under special conditions and circumstances the humanitarian doctrine has been held to require that a track laborer be given the protection of the duty of the operators of trains to keep a lookout at the place where he is working (e. g. Hardwicke v. Railroad, 168 S. W. 328) for the reason, as stated in the Rashall case, supra, ''that railroads are required to exercise at all times a degree of care and vigilance commensurate with the occasion. This implies a duty on their part correlative with the danger to be encountered. Hence in passing portions of their tracks subjected to public use or license, they are charged with a knowledge of what is actually seen or what could be seen with proper care.''

But at places where the engineer has no reason to anticipate the presence of other persons than track workmen and their occupation or situation includes no special or extraordinary element of danger, the engineer is entitled to indulge the presumption of a clear track and is not required to be on the lookout for such employees. Plaintiff's activities while on or off duty frequently placed him on or near the tracks over

which trains were being run, his duty required him to keep out of the way of trains and there was no occasion for him and his fellow laborers to incur any greater hazard than that usually encountered by ordinary section men employed on country sections. To hold that the engineer owed him the duty of being on the lookout for him would be to abrogate completely the rule that such employees must look out for themselves. Defendant cannot be held liable for the injury unless there is room in the evidence for a reasonable inference that the engineer saw plaintiff in a position of peril and negligently failed to put forth a reasonable effort to save him by giving a warning signal. The engineer, according to his own testimony, was maintaining a lookout while the train was approaching and, of course, he must have seen plaintiff walking in the space between the tracks. His statement that he did not see him, in view of the fact that he did not know of the injury until his return trip, means nothing more than his saying that the incident of seeing him was devoid of any impressive element and had been completely forgotten. In a run between division points an engineer has many duties to perform and sees many persons on or near the track. Unless something occurs to attract his attention especially to a person thus briefly seen the impression left upon his memory is apt to be of the most fleeting character. If there was anything in the appearance of plaintiff to suggest that he was in danger of being struck and was unconscious of the danger, the assertion of the engineer that he was looking ahead and did not see that which was plainly to be seen and which was invoking his humane care and attention, would appear to be, as has been repeatedly said in similar cases, a palpable falsehood, and to offer no contradiction to the inference that either he was not looking, or else did look and saw plaintiff in a perilous position and negligently failed to put forth a saving hand.

The facts and circumstances in evidence do not warrant an inference convicting the engineer of any breach of duty and of attempting to exonerate himself and defendant with a falsehood.  There was nothing in the position or conduct of this track workman to indicate that he was not performing his duty to keep out of the way of the train and if not warned was in danger of being injured.  Seeing him walking along between the tracks in a manner that carried no suggestion that he was in peril because of his own lack of proper attention, the engineer was not required to anticipate that he might thoughtlessly protrude his elbow an inch or two into the path of the train.  As is well said in Evans v. Railroad, supra, "It is of common knowledge that these men often voluntarily wait until trains get dangerously close to them and then step out of danger and let them pass by, and to require trains to stop upon all such occasions, when section men are discovered at work on the track, would not only be imposing upon railroads unjust burdens but would greatly interfere with traffic and travel."

Of course it requires but little effort for an engineer to give a warning signal and it is his duty to do so whenever he sees in the appearance of a workman on or near the track that which suggests that he is unaware of the approach of the train and thereby is in danger of being struck, but in the absence of any such appearance, as in the present case, the engineer is not required to burden himself with the performance of an apparently unnecessary task.  The burden was on plaintiff to show that the engineer actually saw him in a position of obvious peril in time to prevent the injury by giving a signal.  His evidence fails to show that he was in such position and it follows that he has failed to make a case to go to the jury. The court committed no error in directing a verdict for defendant.

Affirmed.  All concur.