GEORGE LEINE, by OSCAR LEINE, his next friend, Respondent, v. KELLERMAN CONTRACTING COMPANY, Appellant.

St. Louis Court of Appeals, December 29, 1908.

1. **SAFE PREMISES: Independent Contractor: Duty to Keep Premises in Safe Condition.** A contractor for the reconstruction of a building was under obligation to keep it in reasonably safe condition to prevent injuring employees of subcontractors while pursuing their duty. An opening in such building extending from the bottom to the top of the seven stories where there had been an elevator shaft should have been guarded in

some manner to protect workmen in the lower part of the building from injury by the fall of material, if there was enough probability of such material falling and hurting the workmen below as to suggest to a person of ordinary prudence the necessity of taking such precaution.

2. ———: ———: ———: **Jury Question.** In such case where an employee of a subcontractor working on the first floor was injured by the fall of a piece of timber dislodged from a scaffold on the fifth floor by a carpenter working for the original contractor, and where there was evidence in a suit for such injuries, to show that there was loose material about the shaft in the upper floors and that the scaffold upon which the carpenter was working was about two feet from the opening, and that it was customary to guard such openings under similar circumstances, it was a question for the jury whether it was negligence on the part of the contractor to leave the shaft unguarded.

3. ———: ———: ———: **Evidence of Custom.** In such case it was competent to show that it was customary to guard such openings under similar circumstances.

4. ———: ———: ———. In such case an instruction which authorized the jury to find for plaintiff if they found the defendant knew or by the exercise of ordinary care might have known plaintiff was at work in the shaft and unprotected from objects which might fall upon him and that the shaft was unguarded, together with other facts relating to the cause of the accident, was not open to the objection that it assumed the defendant ought to have anticipated that some article would fall down the shaft.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

Affirmed.

*J. C. Goebel* and *J. Hugo Grimm* for appellant.

*Percy Werner* for respondent.

(1)   It is the duty of an original or general contractor having charge of the construction of an entire building, to exercise ordinary care in keeping the premises in a reasonably safe condition, so as to avoid injury to those who are rightfully there and engaged in work

upon the building, though not employed by him, and a failure to exercise such care is negligence which will render such original contractor liable to one injured by reason of such negligence. Loehring v. Construction Co., 118 Mo. App. 163. ·The employee of a subcontractor and an employee of the original or general contractor are not fellow-servants. Dale v. Construction Co., 108 Mo. App. 90. (2) While the negligent act must, in all cases, be the proximate cause of the injury in order to make the actor responsible therefor, if the injury follows as a direct consequence of the negligent act or omission, it cannot be said that the actor is not responsible therefor, because the particular injury could not have been anticipated. . . . In case the negligence is shown "and the injurious consequences are immediate and flow directly from the negligent act, the person guilty of the act will not be excused for the reason that the particular consequences were unusual and could not ordinarily have been foreseen." Hoepper v. Hotel Co., 142 Mo. 388; Harrison v. Electric Light Co., 195 Mo. 628; Lang v. Railroad, 115 Mo. App. 497. (3) The motion for new trial does not claim that there was no evidence to support the verdict, and no exception was taken to the refusal of the trial court to peremptorily instruct the jury to find for the defendant at the close of all the evidence in the case, consequently this·court has no power to review the evidence or consider its weight. Levels v. Railroad, 196 Mo. 606; Dowling v. Wheeler, 117 Mo. App. 169. (4) It is not claimed in motion for new trial that the verdict is excessive, therefore error in the admission of testimony relating solely to damages, will not reverse because harmless. The damages were assessed at a very reasonable figure. Rittel v. Iron Co., 127 Mo. App. 463; Saller v. Friedman Bros. Shoe Co., 109 S. W. 794.

GOODE, J.—George Leine, a minor who sues by next friend, lost a finger in an accident while he was working on the reconstruction of the building at the southwest corner of Seventh street and Lucas avenue in the city of St. Louis. The building had been divided by partition walls into three distinct tenements, and was undergoing reconstruction so as to make it into one tenement by removing the partition walls and putting in columns and girders in place of them. The building was seven stories high and toward its southeast corner was an elevator shaft about nine feet square which ran through all the stories. This opening was to be abandoned for elevator purposes, but was to be enlarged and used for a spiral stairway to run from the basement through the stories. At the time of the accident the shaft had been enlarged accordingly, and was of a size variously estimated by the witnesses at from nine feet in width by twelve to eighteen feet long. The defendant, the Kellerman Construction Company, was contractor for the whole work, and the National Iron Works was subcontractor to do the structural iron work needed in the reconstruction of the building. Plaintiff was in the employ of the latter company as an iron worker. He was injured in this way: several men with whom he was at work on the first floor, that is, the floor above the basement, were engaged on the day named, in putting in the spiral stairway on that floor, and were, of course, working in and about the opening in the floor through which the stairs were to ascend. At the same time two men in the employ of defendant company, were at work on the fifth floor placing a girder, which supported the joists, into the south wall of the building. At the time of the accident they were fastening an iron plate in the wall to hold up the girder. A scaffold had been constructed on the fifth floor six feet high above the floor, five or six feet long and two and one-half or three feet wide. The two men were standing on the scaffold adjusting the iron plate, when a movement of

one of them brought his foot into contact with a heavy piece of pine timber two feet long and three or four inches thick, which lay on the scaffold. The force with which the foot of the workman struck the block, threw it off the scaffold and it fell on end, rebounded and pitched down the opening prepared for the stairway. When it reached the first floor plaintiff was at work on the stairway which already came that far up from the basement through the opening in the floor. At the instant when the billet of wood reached the first floor in its descent, plaintiff was stooping over working with a lever and his left hand was resting flat on the top of an "I" beam. The piece of wood struck this hand and cut off the forefinger. The present action was instituted to recover damages for the injury, the petition alleging the accident was due to the neglect of the defendant to keep the premises in a reasonably safe condition, or exercise care in the progress of the work to protect employees and persons on the premises. The particular breach of duty charged was omitting to cover or guard the stairway opening so as to prevent material from falling down it from the floors above and injuring workmen who were engaged below. Another act of negligence was charged in the petition, but the case was submitted to the jury only on the one stated. The answer was a general denial. A verdict was returned for plaintiff for $1,700, and judgment having been entered for said sum, this appeal was taken.

Complaint is made of the refusal of the trial court to direct a verdict for defendant, of the admission of certain testimony and of an instruction given in behalf of plaintiff.

It is insisted no negligence was established because the accident was one which could not have been anticipated and, therefore, defendant was under no duty to guard against it. In support of this proposition it is said the scaffold on which the men were at work on the

fifth floor, was so far from the opening of the stairway, it would not have occurred to a person of ordinary foresight that the piece of timber which fell might be knocked off the scaffolding, descend through the opening and hurt workmen below. This argument is fallacious in two respects: it restricts the duty of defendant in too narrow an orbit, and assumes the testimony was uniform about the distance of the scaffold from the opening. If it was defendant's duty to cover the aperture in the floor, or guard it by putting boards around it or in some other way, the extent of the duty was to protect workmen below not only from injury by the piece of timber that fell, but from injury by the fall of any material which happened to be above; and whether defendant was under the duty to afford such protection, depended on whether there was enough probability of something falling down the opening and hurting a workman below, to suggest to a contractor of ordinary prudence the necessity of taking precautions. [16 Am. and Eng. Ency. Law (2 Ed.), pp. 486, 487; Graney v. Railroad, 140 Mo. 89, 98; Hoeffer v. Hotel Co., 142 Mo. 378, 388.] Testimony which tended to prove the opening of the shaft ought to have been covered, was elicited by defendant's cross-examination of one of the men who was working on the scaffold on the fifth floor. This witness was asked if, considering the fact that he and his co-worker were engaged eight or ten feet from the shaft, the opening should have been closed according to custom. He answered that as "everything was kind of shaky around there anyhow, and it was an old building," he judged the opening ought to have been closed; saying, further, "there was more or less stuff laying around, pieces of brick and one thing and another"; that there were probably some timbers and bricks on the floor which had been taken out of the hole where the girder went into the wall. It is contended the rubbish had all been removed from the various floors; but said witness testified it had not been, but that loose material

which was liable to fall down the shaft and do harm was still in the building. While most of the evidence is uniform that the scaffold was about eight feet from the shaft, a witness for plaintiff, Kinworthy, swore the carpenters on the fifth floor were at work a foot or two from the opening and that the scaffold was two feet from it. It is true he said he did not make a close estimate but just guessed; still, he said that from where he was working on the first floor with plaintiff, he could plainly see the two carpenters on the scaffold on the fifth floor; that he could see all the way to the fifth floor and back as much as eight feet from the opening. The man who knocked the timber off the scaffold was put on the stand by defendant. He said when the timber fell from the scaffold, it hit right on the edge of the hole in the fifth floor and slipped off. He said again it struck on end a second time and then fell into the hole. Considerable testimony was given tending to prove it was customary and proper, under the circumstances narrated, to cover or otherwise guard such openings in order to protect men who were working below from falling material. This court is pressed earnestly to say there was no evidence of negligence, because an injury of the kind could not be foreseen. Except in a case where it is clear no inference of negligence reasonably can be drawn from the facts, this ruling will not be made; and we think it would be an undue assumption of authority, considering our slight knowledge of such affairs, for us to declare an ordinarily prudent contractor would have taken no pains to prevent the fall of material down the stairway opening. This was a jury question, and one on which they might be enlightened by expert testimony regarding the necessity of providing some safeguard. Therefore it is proper to consider, in connection with the point under advisement, the further assignment that the court erred in admitting testimony that it was customary to guard such holes as the stairway apertures in the floors. A custom of that kind would be the outcome,

no doubt, of experience showing it was necessary, and an inexperienced person would be unlikely to know whether it was or not, for it is no matter of common knowledge. Our Supreme Court has said usage is the test of due care (Minnier v. Railroad, 167 Mo. 99; Chrismer v. Telephone Co., 194 Mo. 189, 209) and this being the law in Missouri, it was certainly not erroneous to let in evidence of what the usage is among building contractors, as tending to establish one fact which it would be the duty of the jury to weigh in deciding whether or not defendant observed due care.

An instruction granted for plaintiff is criticised as erroneous on the theory that it assumes a principal fact in dispute, to-wit: whether defendant ought to have anticipated the fall of some article down the shaft. After predicating other facts which the jury were told they must find in order to return a verdict for plaintiff, the instruction proceeded as follows: that if the jury found defendant knew, or by the exercise of ordinary care could have known, plaintiff was at work in the opening on the first floor, and was entirely unprotected from injury from material or objects which might fall into said shaft from the upper floors, if they so found from the evidence; that defendant negligently failed to cover the opening or shaft, or otherwise guard it to prevent material from falling into and down it from the upper floors; that plaintiff was injured by being struck by a certain heavy block of wood which was allowed to fall from one of the upper floors into the shaft, and that his injury was the direct result of said negligence of the defendant, if any there was, then the verdict should be for the plaintiff. The brief for defendant says the very point in controversy is assumed by the court in said charge, viz: that the defendant should have anticipated the block of wood, or some other object, was likely to fall down the elevator shaft. This was not taken for granted; but instead the jury were thus advised; in order to return a verdict for plaintiff

they must find "defendant knew, or by the exercise of ordinary care might have known, plaintiff was at work in said shaft, and was entirely unprotected from material or objects which might fall into said shaft from said upper floors, if you so find from the evidence." Under the charge of the court the jury were bound to find not only that articles might fall down the shaft, as of course they might, but that defendant, by the exercise of ordinary care, could have known or realized the danger of such a mishap. We hardly understand the reasoning of the brief in this connection; for it seems clear the jury were not advised expressly or by implication, that defendant ought to have realized this danger, but that the court submitted for a finding, the question of whether or not defendant could have realized it by observing reasonable care.

Complaint is made of the testimony given by a witness, that plaintiff, in consequence of having lost one finger, would lose half his time as a structural iron worker. This witness testified that since the accident, plaintiff could not gouge holes or do chipping or cutting with a chisel and hammer; tasks which the witness said iron workers were frequently called on to do; further, that a man with one finger gone would not stand the same chance as he otherwise would to obtain employment, and in case of slack work would be the first to lose his job. The question to which an exception was saved was, what proportion of time a structural iron worker, disabled as plaintiff was, would lose from regular employment in consequence of his disability, and the answer was that he would not work half as much as a man with all his fingers. We are far from sure this evidence was not properly received, to assist the jury in ascertaining what loss of earnings plaintiff would suffer in consequence of his injury, which is something the average man knows little about, because he knows little of how much the left forefinger is needed in the various kinds of work skilled mechanics do in shaping and

placing structural iron.    However, as no point was made in the motion for new trial, and as none is made on the appeal, that the verdict was excessive and as this testimony went only to the amount of damages plaintiff ought to be awarded if he was entitled to recover, there ought not to be a reversal in any event for its admission.

The judgment is affirmed.    All concur.